IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JACK POLLACK,<br><br>    Defendant.<br>                                 / | No. CR 13-00006 WHA<br><br>**ORDER DENYING DEFENDANT POLLACK'S MOTION TO SUPPRESS EVIDENCE; GRANTING IN PART MOTION FOR BILL OF PARTICULARS; AND SETTING EVIDENTIARY HEARING** |

## INTRODUCTION

Defendant moves to suppress evidence seized pursuant to a search warrant on the ground that the affidavit in support of the government's search warrant contained information that was deliberately or recklessly omitted. Defendant further moves to suppress statements defendant gave to police while being transported following his arrest. Lastly, defendant moves for a bill of particulars. For the reasons stated below, defendant's motion to suppress evidence is **DENIED**. To the extent stated below, defendant's motion for a bill of particulars is **GRANTED IN PART**. An evidentiary hearing is hereby set on defendant's motion to suppress statements.

## STATEMENT

This action arises out of an alleged home invasion robbery in Lake County, California. The complaint alleges that on October 4, 2012, two men dressed in Lake County Sheriff's Office uniforms entered a residence in Hidden Valley, California and robbed the victims of, *inter alia*, 48 marijuana plants with an estimated value of $96,000. On January 8, 2013, a criminal indictment was filed against Jack Pollack, Eric Mendonca, Terry Jacksen, and Michael Puckett. In addition to charges stemming from the alleged robbery and impersonation of an officer, the

indictment charges defendants with conspiracy to distribute or possess with intent to distribute marijuana and use or possession of a firearm in furtherance of a crime of violence and a drug-trafficking crime. Pollack is further charged with being a felon in possession of a firearm and with possession with intent to distribute methamphetamine and marijuana in violation of 21 U.S.C. 841.

Defendants Mendonca and Jacksen filed motions for an evidentiary hearing and to suppress evidence pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on the ground that the search warrant affidavit contained material omissions and errors that were intentional or reckless. An evidentiary hearing was held on the *Franks* motions. Prior to the adjudication of the motions to suppress, however, the government reached a resolution with both defendants. After filing several motions, defendant Puckett withdrew his motions and pled guilty on June 4, 2013. Accordingly, Pollack is the sole remaining defendant in this action. Pollack has filed a motion to suppress evidence seized during a search of defendant's residence on December 19, 2012, pursuant to a search warrant; a motion to suppress un-Mirandized statements defendant made while being transported following his arrest; and a motion for a bill of particulars.

### 1. DECEMBER 19 SEARCH PURSUANT TO WARRANT ISSUED BY MAGISTRATE JUDGE.

The following facts are relevant to Pollack's motion to suppress evidence seized pursuant to a search warrant. On December 19, 2012, FBI agents and local law-enforcement officers executed a search of Pollack's house pursuant to a warrant (Dkt. No. 1 ¶ 12). From Pollack's house, the officers seized eighteen pounds of "processed marijuana," digital scales, "a ledger that resembles a pay/owe sheet," plastic bags, jars labeled with different strains of marijuana, pills of Fentanyl (described as "a powerful synthetic opiate"), and "at least two toy guns" (Dkt. No. 1 at 6–7). That same day, the property where Mendonca and Jacksen resided was also searched pursuant to the same warrant (*id*. at 5–6). The search of that property was the subject of prior motions and an evidentiary hearing herein and is not challenged in the instant motion to suppress.

The search warrant for the two properties was issued by Magistrate Judge Nathanael Cousins on December 17 based on the affidavit of FBI Special Agent Vivien Moon. Agent

2

Moon's belief that the property would contain the evidence sought was based on information from a confidential informant and investigation into an alleged robbery in Hidden Valley Lake. As to defendant Pollack, the information in the search warrant affidavit specific to him included (1) statements from the robbery victim and his identification of Pollack in a photo line-up, (2) statements made by a security guard who worked at the gated community where Pollack lived, and (3) a statement from the confidential informant that "Jack" was part of the robbery crew and had participated in a robbery in October 2012.

### A. The Confidential Informant's Statements.

Agent Moon's affidavit stated that in November 2012, FBI agents and officers from the FBI Safe Streets Task Force met with a confidential informant who claimed to have information about robberies committed by perpetrators wearing law enforcement uniforms. The confidential informant stated that she was in a "close relationship" with defendant Jacksen and had "direct and frequent contact and communication" with him. The informant stated that Jacksen and others were "part of a crew that had recently committed multiple home invasion robberies in and around Lake County" (Dkt. No. 129-1 at 6). Specifically, Jacksen told the informant that Jacksen and his crew had committed such a robbery in early October 2012. Details reported by the informant about the robbery included that two individuals named "Jack" and "Donny" had participated in the October 2012 robbery with Jacksen.

Around October 2012, Jacksen showed the confidential informant a video recording of a home invasion robbery that Jacksen and his crew had recorded during one of the robberies. The video depicted Jacksen and others wearing what appeared to be police uniforms. The informant had observed police uniforms and gear in Mendonca's residence. She further reported that "loot" from the robberies, firearms used in the furtherance of those robberies, and drugs for sale were stored in buildings on Mendonca's property.

### B. The Investigation of the October 2012 Robbery.

On November 27, 2012, deputies from the Lake County Sheriff's Office interviewed Joel Massanti, who claimed to be a victim of a home invasion robbery. According to Massanti, the robbery occurred on October 4 at his residence in Hidden Valley. Massanti stated that, several

hours before the robbery, he saw a man "peeking through the window" of Massanti's residence. He went outside to speak with the man, who told him he was there to respond to a service call for well water. Massanti told the man that the water was fine; the man then left. Massanti followed the man towards the end of the driveway and observed him get into a white pick-up truck containing tools, tool cabinets, and metal pipes. Several hours later, two different men knocked on Massanti's front door. Both men were wearing brown Lake County Sheriff's Office shirts and carried weapons. The men said that the Bureau of Alcohol, Tobacco, Firearms and Explosives was in town and had observed marijuana on the property. They said they wanted to search the house before their sergeant and others arrived. The two men conducted patdown searches on Massanti and his three friends, then restrained them using handcuffs and zip ties. The men searched the residence "stating that they were looking for powders, other drugs, and money" (*id.* at 9). Massanti observed a truck outside the window that he believed to be the same white truck he had observed the first man getting into earlier that day. He also observed a second truck with a trailer.

The next day, an unidentified friend of Massanti's discussed the robbery with a security guard who worked at the gated community where defendant Pollack lived. The security guard commented that Pollack had a well pump business and that Pollack's truck matched the description of the truck Massanti had seen. He further stated that there were two white trucks, one with a trailer, outside of Pollack's residence on the day of the robbery. Based on this information, Massanti and his friend searched for Jack Pollack on the internet and found a photograph of Pollack advertising "Pollack and Sons Pumps." Massanti also searched the website of the Lake County Sheriff's Office for booking photos and found a picture of Pollack. Massanti recognized Pollack as the man who had come to his residence for well-water maintenance the day of the robbery.

On December 13, FBI agents met with Massanti. He positively identified Pollack from a photo line-up as the man who came to his door on October 4 purporting to respond to a well-water issue.

4

Based on the foregoing information disclosed in Agent Moon's affidavit, Magistrate Judge Cousins issued a search warrant to search Pollack's residence as well as the property where Mendonca and Jacksen resided. Defendant now moves to suppress the evidence seized pursuant to the warrant on the ground that the search warrant affidavit contained false or misleading information or omissions.

### 2. STATEMENTS MADE TO POLICE OFFICER DURING TRANSPORT.

Following the December 19 search of his residence, defendant Pollack was arrested. He was then transported to the county jail by Officer Kyle C. Philp of the Santa Rosa Police Department. During the approximately hour-long ride, defendant made a number of statements to Officer Philp, which the officer recorded. Defendant now moves to suppress statements made to the officer, contending that they were made pursuant to custodial interrogation, or its functional equivalent. The parties agree that defendant was in custody and was not read his Miranda rights by Officer Philp at any time prior to making the challenged statements.

For the reasons stated below, defendant's motion to suppress evidence seized pursuant to the warrant is **DENIED**. The motion for a bill of particulars is **GRANTED IN PART AND DENIED IN PART**. An evidentiary hearing is hereby set on defendant's motion to suppress statements at 8:00 a.m. on August 5.

**ANALYSIS**

### 1. MOTION TO SUPPRESS EVIDENCE.

Pursuant to *Franks v. Delaware*, 438 U.S. at 171, "[a] defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). Our court of appeals has held that there are five requirements that must be satisfied before a defendant is entitled to a hearing under *Franks*:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits,

5

must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause.

*United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986).

Where the issue is the omission of relevant facts, a court should review the affidavit with the omitted facts included. Where an informant's "history of criminal acts involving dishonesty renders his/her statements unworthy of belief, probable cause must be analyzed without those statements." *Reeves*, 210 F.3d at 1044 (citing *United States v. Hall*, 113 F.3d 157, 159 (9th Cir. 1997)). The determination of whether information provided by an informant establishes probable cause is based on the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Rowland*, 464 F.3d 889, 907 (9th Cir. 2006).

### A. Substantial Showing of Falsity.

The first prong of the *Franks* test requires a substantial preliminary showing that the affiant "intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). "Allegations of negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. At this stage, however, "clear proof of deliberate or reckless omission is not required." *Stanert*, 762 F.2d at 781.

Pollack contends that the affidavit omitted certain information regarding the criminal history of Victim Massanti that he contends bears on his reliability. Specifically, Pollack contends that Massanti's prior criminal history and the circumstances of his involvement in marijuana cultivation were not disclosed to the magistrate judge. Pollack further argues that the problems in the search warrant affidavit identified during the prior *Franks* hearing as to defendants Mendonca and Jacksen indicate that the affidavit as a whole is tainted, such that "it may be impossible to separate the known tainted portions of the application as it pertains to" Pollack (Br. 9).

The government contends that information regarding Massanti's prior criminal history was not intentionally or recklessly omitted from Agent Moon's affidavit, and that the affidavit was clear that Massanti was involved in marijuana cultivation on a large scale. Even if

6

1  Massanti's criminal history had been included, the government argues, the information would
2  not have been material to the magistrate judge's determination, as his criminal history is limited
3  to one prior conviction for possession of marijuana in 2010, for which he received "Diversion
4  and Probation" (Dkt. No. 149).  Next, the government argues that if Magistrate Judge Cousins
5  had been informed about the confidential informant's criminal history, cooperation arrangement,
6  and drug use, he would have nevertheless found probable cause to authorize the search of
7  Pollack's residence based on Victim Massanti's identification.

8  "Allegations that statements reported in the affidavit and made to the affiant are false are
9  not sufficient to satisfy the requirements for a *Franks* hearing unless the defendant contends that
10 the affiant has misrepresented the statements made by another." *United States v. Perdomo*, 800
11 F.2d 916, 921 (9th Cir. 1986).  Aside from the omission of Massanti's criminal history,
12 defendant relies entirely on the omissions and inconsistencies identified in defendants Mendonca
13 and Jacksen's motions to suppress and testimony from the *Franks* evidentiary hearing.  That
14 information was largely based on statements from the confidential informant.  As to Pollack,
15 however, the information relevant to the magistrate judge's probable cause determination was
16 based on Massanti's statements and his later photo identification of defendant.  Assuming,
17 *arguendo*, that defendant can establish a substantial showing of falsity based on information in
18 the affidavit that was not relevant to the magistrate judge's probable cause determination as to
19 defendant, he must also provide a substantial showing that the affidavit, with the corrected or
20 omitted information included, is not sufficient to support a finding of probable cause.  As
21 discussed below, he has failed to do so.

22              **B.     Whether Probable Cause Is Established.**

23 "When a court is considering whether an informant's tip is sufficient to support a finding
24 of probable cause or reasonable suspicion, the court must employ a
25 'totality-of-the-circumstances approach' that takes into consideration the informant's 'veracity'
26 or 'reliability' and his 'basis of knowledge.'" *Rowland*, 464 F.3d at 907 (9th Cir. 2006) (quoting
27 *Gates*, 462 U.S. at 238 (1983)).  Indicia of reliability include:  "1) the opportunity to view the
28 criminal at the time of the crime; 2) the degree of attention paid to the criminal; 3) the accuracy

7

of the prior descriptions of the criminal; 4) the level of certainty demonstrated at the time of confrontation; and 5) the length of time between the crime and the confrontation." *Grant v. City of Long Beach*, 315 F.3d 1081, 1087 (9th Cir. 2002), amended, 334 F.3d 795 (9th Cir. 2002). A judge's "determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271(1960)); *see also United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002).

The facts establishing probable cause to search Pollack's property were in large part based on Victim Massanti's information. Pollack asserts that the credibility of the victim is called into serious question because he is "an admitted criminal, being involved himself in the shadowy criminal world of growing marijuana and using his rural residence to conceal the growing [of] marijuana" (Br. 7). Moreover, Massanti did not report the robbery himself, but waited until he was contacted by the police. Defendant argues that Massanti's statements are therefore "inherently unreliable." All of this information, however, was included in the search warrant affidavit and was considered by the magistrate judge. The only relevant information regarding Massanti that defendant contends was improperly omitted from the affidavit is Massanti's prior criminal history, which is limited to a conviction for marijuana possession in 2010. Massanti's involvement in the illicit cultivation and/or trade of marijuana was obvious from the face of the search warrant affidavit; that he had a conviction for marijuana possession would have had little effect on the magistrate judge's assessment of Massanti's reliability.

The probable cause determination as to Pollack was largely based on Massanti's identification of defendant. This order finds that the identification was sufficiently reliable, even if the additional information regarding Massanti's prior conviction for possession of marijuana had been included in the affidavit. Here, Massanti was clearly involved in marijuana cultivation,

8

a fact that was apparent from the affidavit. Massanti did, however, provide information to law enforcement as a "citizen witness, not an informant, and such witnesses are generally presumed reliable." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citing *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976)). Massanti provided the information to officers in a face-to-face interview and described the basis of his knowledge — namely, his first-hand observations of Pollack's unsolicited visit to his house, under pretense of responding to a service call for well-water maintenance. Massanti followed Pollack down to the end of the driveway and observed him getting into a "white colored pick-up truck containing tools, tool cabinets, and metal pipes" (Dkt. No. 129-1 at 9). Several hours later, two other men came to Massanti's house and searched and restrained Massanti and his friends. Massanti said that he looked outside the window and saw a truck that he believed to be the same truck he had seen Pollack getting into earlier that day. Based on an observation from a security guard who worked at the gated community where Pollack lived, Massanti searched for a picture of defendant on the internet and found a photograph of defendant advertising "Pollack and Sons Pumps." Massanti also found a booking photo of defendant on the Lake County Sheriff's Office website. He recognized defendant as the person who had come to his house a few hours before the robbery. Massanti later met with FBI agents on December 13 and identified defendant from a photo line-up.

     Next, defendant's contention that the search warrant affidavit was so tainted with erroneous or omitted information related to the confidential informant that the entire affidavit must be thrown out is unpersuasive. This Court previously determined that defendant Mendonca had made a sufficient preliminary showing of substantial falsity to justify an evidentiary hearing under *Franks*. At no point, however, did a ruling issue as to whether any statements by the affiant, Agent Moon, contained material falsehoods or omissions that were deliberate or reckless. Nor did the Court rule as to whether the affidavit, once corrected and supplemented, nevertheless established probable cause as to either Mendonca or Jacksen, or both.

     The only statement in the affidavit that the confidential informant made regarding defendant Pollack was that Jacksen had told the informant that "Jack" was part of the robbery crew. Standing alone, this information would of course be insufficient to establish probable

9

1  cause. As discussed above, however, the probable cause determination as to Pollack was largely
2  based on Massanti's description of the robbery and his identification of Pollack. This order finds
3  that, viewing the search warrant affidavit under the "totality of the circumstances" approach and
4  considering the inconsistencies and errors identified at the *Franks* hearing, the search warrant
5  affidavit sufficiently established probable cause as to Pollack. Accordingly, defendant's motion
6  to suppress evidence seized pursuant to the December 19 search of his residence and for a
7  *Franks* hearing is **DENIED**.

### 2. MOTION TO SUPPRESS STATEMENTS.

Defendant moves to suppress statements he made following his arrest on December 19. After his arrest, defendant was transported to the county jail by Officer Philp of the Santa Rosa Police Department. During the approximately hour-long ride, defendant made a number of statements to Officer Philp, which the officer recorded. In connection with the motion, the parties have lodged a copy of the audio recording, which lasts approximately 58 minutes. The parties agree that defendant was in custody and was not read his *Miranda* rights prior to making the challenged statements. Therefore, the sole issue is whether the statements were made in response to interrogation, or its "functional equivalent." *See Rhode Island v. Innis*, 446 U.S. 292, 301 (1980). As stated at the hearing on the motion, the parties deserve an opportunity to supplement the record with the short evidentiary hearing requested by defense counsel. An evidentiary hearing is hereby set for 8:00 a.m. on August 5.

### 3. MOTION FOR A BILL OF PARTICULARS.

Defendant moves to dismiss the indictment or for a bill of particulars. The motion addresses only counts one through six of the ten-count indictment. The indictment charges defendant, and co-defendants, with an alleged home invasion robbery on October 4, 2012. Defendant, and co-defendants, are further charged with an alleged conspiracy to commit robbery and conspiracy to distribute or possess with intent to distribute marijuana (counts one and three), use or possession of a firearm in furtherance of a crime of violence and a drug trafficking crime (count four), and impersonation of an officer of the United States and conducting a search while falsely impersonating an officer, agent, or employee of the United States (counts five and six).

10

Rule 7(f) provides that "[t]he court may direct the government to file a bill of particulars." The decision whether to grant a request for a bill of particulars is within the trial court's discretion. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). Our court of appeals has explained that the bill of particulars serves three functions: to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial; to avoid or minimize the danger of surprise at the time of trial; and to protect against double jeopardy. *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991). A bill of particulars should be limited to these purposes, and a defendant "is not entitled to know all the evidence the government intends to produce but only the theory of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986). Furthermore, the government may add clarity to the allegations via discovery, and "full discovery obviates the need for a bill of particulars." *United States v. Giese*, 597 F.2d 1170, 1180–81 (9th Cir. 1979).

As an initial matter, defendant provides no authority in support of his contention that an indictment that fails to provide sufficient specificity must be dismissed. Defendant requests information regarding the dates of the alleged conspiracies and the date each defendant and "others known" joined and last participated in the conspiracies; an identification of the who, what, when, and where of meetings where the conspiracy was discussed; information regarding "each criminal or other act," including the identities of all participants in and victims of the crimes or acts; and the role defendant played in the conspiracy. The government opposes the requests, stating that the five-page complaint provides a complete description of the robbery charged in count two. According to the government, the complaint "described the alleged events underlying the charged crimes . . . and reflects a summary of the government's theory of the case." Only the October 4 robbery is described in the complaint. The government should identify all robberies, attempted robberies, or planned robberies upon which the conspiracy charge is based, including, if known, the approximate dates, locations, and victims. Furthermore, the government should identify and describe any other illegal acts alleged to have been done in furtherance of either of the charged conspiracies, and all victims thereof. The

government need not describe each meeting where each conspiracy was discussed and need not identify all witnesses to the alleged robberies or illegal acts.

As to the exact dates on which defendant or his alleged co-conspirators became members of or withdrew from the conspiracies, this order agrees that defendants are not entitled to these specific details, which are generally not within the government's knowledge. *See United States v. Diaz*, 2006 WL 1833081, at *3 (N.D. Cal. June 30, 2006). Moreover, the government has provided approximate dates on or about which the conspiracy began and ended. For example, the indictment states that "from at least in or about September 2012 up through and including in or about November 2012," the defendants conspired to commit robbery. That level of detail is sufficient to provide adequate notice to defendant.

The government contends that the indictment and complaint together provide sufficient information regarding defendant's alleged role in the conspiracies. The complaint details defendant's involvement in the alleged October 4 robbery and identifies evidence seized pursuant to a search of defendant's house, which included eighteen pounds of "processed marijuana." The information provided regarding the October 4 robbery is sufficiently detailed. To the extent that the government alleges that the conspiracies involved additional robberies (executed, attempted, or planned) or distribution of marijuana, the government should provide such information regarding the additional illegal acts, as discussed above.

Defendant also seeks further information regarding the firearm charge in count four, including the model of each weapon and whether he is charged with principal liability, aiding and abetting, or both. In its opposition, the government provides additional information regarding count four, stating that the government's theory is that defendant aided and abetted his co-defendants and co-conspirators in their carrying and brandishing of firearms in furtherance of the robbery charged in counts one and two and in furtherance of the conspiracy to possess with intent to distribute marijuana charged in count three (Opp. 5). Specifically, the government alleges that defendant "cased the victim's property" before his co-conspirators used guns to rob the victim of, *inter alia*, "distribution quantities of marijuana." This information is sufficient to

moot defendant's request as to count four. To the extent known, however, the government should provide the model of each firearm related to the charge in count four.

## CONCLUSION

For the reasons stated above, defendant's motion to suppress evidence seized pursuant to the December 19 search of his residence is **DENIED**. Defendant's motion for a bill of particulars is **GRANTED IN PART**. The government must provide the specified information forthwith, and in any event no later than **AUGUST 2**. An evidentiary hearing on defendant's motion to suppress statements is hereby set for **AUGUST 5 AT 8:00 A.M.** The Court is interested in hearing testimony from Officer Philp and defendant (if he so chooses).

**IT IS SO ORDERED.**

Dated: July 31, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE